IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

INTERNATIONAL INSURANCE COMPANY, )
for itself and as Successor In Interest to )
International Surplus Lines Insurance Company, )
The North River Insurance Company, United )
States Fire Insurance Company and/or Westchester )
Fire Insurance Company, Industrial Indemnity )
Company, United States Fire Insurance Company )
of Canada, Toronto, Ontario, and Herald Insurance )
Company of Canada, Toronto, Ontario, )
               )
             Plaintiff, )
             )   Civil Action No.
    v. )
             )
CAJA NACIONAL DE AHORRO Y SEGURO, )
             )
             Defendant. )

## COMPLAINT

International Insurance Company, for itself and as successor in interest to International

Surplus Lines Insurance Company, The North River Insurance Company, United States Fire

Insurance Company and/or Westchester Fire Insurance Company, Industrial Indemnity Company,

United States Fire Insurance Company of Canada, Toronto, Ontario, and Herald Insurance

Company of Canada, Toronto, Ontario ("IIC"), complains of Defendant, Caja National De

Ahorro y Seguro ("Caja"), as follows:

### Nature of the Action

     1.     This action seeks damages in connection with Caja's failure to pay amounts due

under certain contracts of facultative reinsurance issued to IIC.

### The Parties

     2.     IIC is a corporation organized and existing under the laws of the State of Illinois

with its current principal place of business in Manchester, New Hampshire. At the time the

contracts were negotiated, IIC's principal place of business was in Chicago, Illinois.

3.     Caja is a corporation organized and existing under the laws of Argentina with its principal place of business in Buenos Aires, Argentina.  Caja is wholly owned by the government of Argentina.

## Jurisdiction

4.     Jurisdiction of this court is proper pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330.  Caja is subject to personal jurisdiction in the United States.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(f)(1) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## COUNT I
## Breach of Contract

6.     For the period from September 1, 1978 through September 1, 1983, IIC provided excess and umbrella liability insurance to Owens-Corning Fiberglas Corporation ("Owens-Corning"), a company domiciled in Toledo, Ohio, pursuant to policies numbers 522000410, XSI005731, XSI006285, XSI006287, XSI007710, XSI007712, XSI007713, and XSI008573 (the "Owens-Corning Policies").

7.     IIC and Caja entered into eight facultative reinsurance contacts pursuant to which Caja agreed to indemnify IIC for a portion of the losses incurred by IIC on the Owens-Corning Policies (collectively, the "Facultative Certificates").  Copies of two of the Facultative Certificates and the Lloyd's of London policies referenced therein are attached hereto as Group Exhibits A and B.  The Facultative Certificates state that they are "subject to the same terms, clauses, and conditions" and are "identical in risk, subject matter and interest" as the attached policies issued by Lloyd's of London.  In turn, each Lloyd's policy incorporated by reference in the Facultative Certificates contains a service of suit provision.

8.     On information and belief, the remaining six Facultative Certificates issued by

Caja contain provisions identical to those described in paragraph 7 hereof which incorporate by reference the terms of a corresponding Lloyd's policy with its service of suit provision.

9.    The Facultative Certificates provide that, in exchange for premium paid by IIC, Caja agreed to reinsure and indemnify IIC for a portion of amounts paid by IIC in connection with judgments and settlements incurred on the Owens-Corning Policies.

10.    IIC has paid various amounts in connection with the investigation, defense and settlement of claims arising under the Owens-Corning Policies.

11.    Pursuant to the terms of the Facultative Certificates, Caja must indemnify IIC for its share of the payments IIC has made under the Owens-Corning Policies.  As of December 31 1999, Caja's share of IIC's payments totalled $2,174,309.82.

12.    On various dates up to and including January 28, 2000, IIC issued reinsurance billing notices to Caja and made demand upon Caja to indemnify IIC for its share of IIC's losses.

13.    Despite demand, Caja has failed to fulfill its obligations under the Facultative Certificates to pay its share of IIC's losses.

14.    By failing to pay its share of IIC's losses, Caja has breached its obligations to reinsure and indemnify IIC as required by the Facultative Certificates.

15.    As a result of Caja's breach of the Facultative Certificates as stated herein, IIC has suffered damages in the amount of at least $2,174,309.82.

## COUNT II
### Breach of the Duty of Utmost Good Faith

16.    IIC realleges each and every allegation set forth in paragraphs 7-15 as paragraph 16 of Count II.

17.    Caja owes to IIC the duty of utmost good faith.

18.    Caja has breached its duty of utmost good faith by failing to pay its share of IIC's

losses as required by the Facultative Certificates.

19.    As a result of Caja's breach of its duty of utmost good faith, IIC has suffered

damages in the amount $2,174,309.82.

WHEREFORE, Plaintiff International Insurance Company, for itself and as successor to

International Surplus Lines Insurance Company, The North River Insurance Company, United

States Fire Insurance Company and/or Westchester Fire Insurance Company, Industrial

Indemnity Company, United States Fire Insurance Company of Canada, Toronto, Ontario, and

Herald Insurance Company of Canada, Toronto, Ontario, respectfully requests that this Court

enter judgment in its favor, and award IIC:

A.    Compensatory damages in the amount $2,174,309.82, plus interest;

B.    Reasonable costs and fees incurred in bringing this action; and

C.    Such other relief as the Court deems just and proper.

INTERNATIONAL INSURANCE COMPANY,
for itself and as successor in interest to International
Surplus Lines Insurance Company, The North River
Insurance Company, United States Fire Insurance
Company and/or Westchester Fire Insurance
Company, Industrial Indemnity Company, United
States Fire Insurance Company of Canada, Toronto,
Ontario, and Herald Insurance Company of Canada,
Toronto, Ontario

By _R. Douglass Bond_____
        One of its Attorneys

James I. Rubin (Attorney I.D. No. 02413191)
R. Douglass Bond (Attorney I.D. No. 06203843)
Randi Ellias (Attorney I.D. No. 06237021)
Butler, Rubin, Saltarelli & Boyd
1800 Three First National Plaza
Chicago, Illinois 60602
(312) 444-9660

W:\I\IIC\Caja\Litigation\complaint.wpd

# EXHIBIT A

## CAJA NACIONAL DE AHORRO Y SEGURO

Whereas NORTH RIVER INSURANCE COMPANY
of Morristown, New Jersey.

(hereinafter called "the Company") has   paid $2,460.00 being 0.41% of /
$600,000.00 Deposit Premium or Consideration to the CAJA NACIONAL DE AHORRO Y SEGURO.

(hereinafter called "the Reinsurer") to Reinsure the Company as more fully defin
in Lloyd's Policy No. 614/NC 5950.

DIRECT ASSURED:    OWENS-CORNING FIBERGLASS CORPORATION

RISK:    Excess Umbrella Liability including Employee Benefit
Liability as underlying but excluding claims arising
from the Employee Retirement Income Security Act of
1974.

SUM INSURED:    $50,000,000 each and every occurrence and aggregate
as applicable

EXCESS OF

$25,000,000 each and every occurrence and aggregate
as applicable.

THIS POLICY IS ISSUED SUBJECT TO THE SAME TERMS, CLAUSES
AND CONDITIONS AND IS IDENTICAL IN RISK, SUBJECT MATTER
AND INTEREST AS POLICY NO. 614/NC 5950 ISSUED BY CERTAIN
UNDERWRITERS AT LLOYD'S LONDON.

This policy is in force
during the period commencing with the   **First**   day of
**September, 1978**   and ending with the   **First**
day of   **September, 1979**   both days at   12.01 a.m. Local
Standard Time.

If the Company shall make any claim knowing the same to be false or fraudulent, as
regards amount or otherwise, this Policy shall become void, and all claim thereunder shall
be forfeited.

Now know ye that the Reinsurer does hereby bind itself to pay or make good
to the Company or to the Company's Executors, Administrators and Assigns all such Loss.
Damage or Liability as aforesaid subject to the terms of this reinsurance policy during the
continuance of this Policy; not exceeding the sum of   Zero decimal four one
percentum of the within mentioned limits.
such payment to be made within Seven Days after such Loss, Damage or Liability is proved.

In Witness whereof I being a Duly Authorised Representative of the Re-
insurer have subscribed my name this   **Twenty Second**   day of
**January**   one thousand nine hundred and **Seventy Nin**

For   CAJA NACIONAL DE AHORRO Y SEGURO

OUR REF.: 1243

**U.S.A.**

## 1% TAX CLAUSE

Notice is hereby given that the Companies have agreed to allow for the purpose of paying the Federal Excise Tax 1% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder the Companies will deduct 1% from the amount of the return and the Assured or his agent should take steps to recover the Tax from U.S. Government.

CEH/SCP. R/1

No. ...... 614/NC. 5950

DEPOSIT
PREMIUM:

$2,460.00 being 0.41% of
$600,000.00

EXPIRY
DATE:

1st September, 1979

*The Company is requested to read this Policy,
and if incorrect, return it immediately for
alteration.*

J1 $ (C.E.H.)

5656 * 18 DEC 1978



# LLOYD'S REINSURANCE POLICY

Ne59lo

**Whereas** NORTH RIVER INSURANCE COMPANY of Morristown, New Jersey (hereinafter called "the Company"), has paid $160,560.00 (being 26.76%)

**Deposit** Premium or Consideration to Us, who have hereunto subscribed our Names to reinsure the Company as more fully described in the attached wording:—

$

Printed by Lloyd's of London Printing Services Ltd.

This policy being for 26.76% is to be responsible for its pro rata proportion of the amounts of insurance stated herein.

*No.* R 614/NC 5950

during the period commencing with the **First day** of **September, 1978** and ending with the **First day** of **September, 1979**, both days at 12.01 a.m. Local Standard Time.

Being a Reinsurance of and warranted same gross rate, terms and conditions as and to follow the settlements of the Company and that the Company retains during the currency of this Policy at least **$2,000,000 subject to excess of loss and/or Treaty Reinsurance** on the identical subject matter and risk and in identically the same proportion on each separate part thereof, but in the event of the retained line being less than as above, Underwriters' lines to be proportionately reduced.

If the Company shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise, this Policy shall become void, and all claims thereunder shall be forfeited.

**Now know Ye** that We, the Underwriters, Members of the Syndicates whose definitive Numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves, each for his own part and not one for another, our Heirs, Executors and Administrators, and in respect of his due proportion only, to pay or make good to the Company all such loss as aforesaid as may happen to the subject matter of this Reinsurance, or any part thereof during the continuance of this Policy; not exceeding **twenty six decimal seven six percentum of the within mentioned limits** such payment to be made after such loss is proved, and so that the due proportion for which each of us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the Total Sum Reinsured hereunder which is in the Table set opposite the definitive Number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this Policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Company or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Company on application.

**LLOYD'S POLICY SIGNING OFFICE,**

*[signature]*

GENERAL MANAGER.

LLOYD'S POLICY SIGNING OFFICE EMBOSSMENT APPEARS HERE ON ORIGINAL DOCUMENT

Dated in London, the **22nd** Day of **January** One Thousand Nine Hundred and **Seventy Nine**.

(C.E.H.M)

**Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum Reinsured hereunder shared between the Members of those Syndicates.**

| AMOUNT PERCENTAGE OR PROPORTION | BROKER | L.P.S O. NO & DATE | AMOUNT PERCENTAGE OR PROPORTION | BROKER | L.P.S O. NO & DATE |
|---|---|---|---|---|---|
| PER CENT | 614 | 65656 18 12 78 | | 614 | 65656 18 12 78 |
| | SYN-DICATE | UNDERWRITER'S REF | | SYN-DICATE | UNDERWRITER'S REF |
| .57 | 653 | 707 | .60 | 346 | NA8395806S21 |
| 1.06 | 231 | 707 | .16 | 694 | 4690LXX31182 |
| 5.63 | 989 | 817390L8886C | .16 | 694 | 4690KXX31192 |
| .46 | 279 | 817390L8886C | .16 | 255 | 919861 |
| 2.43 | 918 | L32HX1758011 | .32 | 255 | 861078 |
| 3.65 | 618 | NA8295825308 | .24 | 56 | X062Y20TX |
| .61 | 278 | NA8295825308 | | | |
| .61 | 948 | NA8295825308 | THE LIST OF UNDERWRITING | | |
| 1.63 | 210 | A2017777 | MEMBERS OF LLOYDS IS | | |
| 1.63 | 190 | 9106502460FC | NUMBERED 1978/12 | | |
| 1.63 | 126 | 505X7S780XEN | | | |
| .41 | 701 | 505X7S780XEN | | | |
| 1.01 | 553 | 59T4XXX748 | | | |
| .41 | 471 | A:X485 | | | |
| .41 | 604 | 812 | | | |
| .41 | 205 | 6884AAA0018 | | | |
| .41 | 263 | CXDX176X0458 | | | |
| .41 | 35 | 50417378 | | | |
| .24 | 369 | 1798848 | | | |
| .60 | 661 | 002Z0XEN3730 | | | |
| .08 | 518 | 002Z0XEN00X8 | | | |
| .41 | 175 | CF7036806501 | | | |
| .33 | 408 | K2162A065801 | | | |
| .08 | 99 | K2162A065801 | | | |
| | NO. SYND | TOTAL LINE | | NO SYND | TOTAL LINE |
| | | | | | 25.76 |

NC 59

15th September

In accordance with your instructions we have effected the follo
Contributing Facultative Reinsurance

**FORM:** Jl or N.M.A. 1779 covering Umbrella Liability
as original including Employee Benefit Liabili
underlying but excluding Employee Retirement
Income Security Act 1974

**REASSURED:** NORTH RIVER INSURANCE COMPANY

**ASSURED:** OWENS-CORNING FIBERGLASS CORPORATION

**PERIOD:** 12 months at 1st September, 1978.

**INTEREST:** Liability arising out of Assured's operations

**SUM INSURED:** $50,000,000 each and every occurrence and
aggregate as form
Excess of
$25,000,000 each and every occurrence and
aggregate as form

**SITUATED:** Worldwide

**CONDITIONS:** Full Reinsurance Clause No. 1 amended
60 days Cancellation Clause
Claims Co-operation Clause
N.M.A. 1685

**PREMIUM:** Deposit premium $600,000
Minimum premium $480,000
adjustable at 28 cents per $1000 on gross rec

**HEREON:** 23.24% Part of 50% of above.

**EFFECTED WITH:** COMPANIES AS PER ATTACHED LIST

For: C.E. HEATH & CO. (NORTH AMERICA) LIMITE

Director

WQ 5950

| | | |
|---|---|---|
| ABROOK INSURANCE CO. LTD. 170 | 26.63% ) | |
| "WINTERTHUR" SWISS INSURANCE CO. E63 | 10.79% ) | |
| EL PASO INSURANCE CO. LTD. 199 | 5.03% ) | |
| DART INSURANCE CO. LTD. 179 | 10.79% ) | 8.12% |
| BERMUDA FIRE & MARINE INSURANCE CO. LTD. 142 | 12.23% ) | |
| YASUDA FIRE & MARINE INSURANCE CO. (UK) LTD. 500 | 7.19% ) | |
| MUTUAL REINSURANCE CO. LTD. 783 | 12.95% ) | |
| ST KATHERINE INSURANCE CO. LTD. D53 | 14.39% ) | |
| | | 1.63% |
| STRONGHOLD INSURANCE CO. LTD. D56 | | 1.63% |
| CNA REINSURANCE OF LONDON LTD. C43 | | 1.63% |
| DOMINION INSURANCE CO. LTD. | | 0.81% |
| INSTITUTO DE RESSEGUROS DO BRASIL | | 0.48% |
| TERRA NOVA INSURANCE CO. LTD. | | 0.41% |
| CAJA NACIONAL DE AHORRO Y SEGURO | | 0.32% |
| BANCO DE SEGUROS DEL ESTADO C32 | | 0.08% |
| VARA REDE SEGURADORA 570 | | 0.81% |
| TRANSAFIANZADORA Y REASEGURADORA DE AMERICA D77 | | 2.43% |
| BERMUDA FIRE & MARINE INSURANCE CO. LTD. 142 | | 1.63% |
| L'UNION ATLANTIQUE S.A. D'ASSURANCES 999 | | 1.63 |
| ROYAL BELGE INCENDIE | 96.774% ) | 1.63 |
| IMPERIO COMPANHIA DE SEGUROS | 3.226% ) | |
| WÜRTTEMBERGISCHE FEUERVERSICHERUNG D72 | | |
| | | 23.24 |

| In | communications please quote | following reference |
|----|-----|-----|
| **614** | **Rx** NC 5950 | |

**FORM J 1** $
(C.E.H.)
                                    **000735**



LLOYD'S          LONDON


# Lloyd's Reinsurance Policy

NORTH RIVER INSURANCE COMPANY

$                              $


$ 160,560.00

OCT 1 1 1979

*Date of Expiry* 1st September, 1979

*The Company is requested to read this Policy and,*
*it is incorrect, return it immediately for alteration.*

In the event of any occurrence likely to
result in a claim under this Policy, immediate
notice should be given to :—

J1 $ (C.E.H.)

65655 * 18 DEC 1978



# LLOYD'S REINSURANCE POLICY

**Whereas** NORTH RIVER INSURANCE COMPANY

of Morristown, New Jersey (hereinafter called "the Company"), has paid **$160,560.00** (being 26.76%) Premium or Consideration to Us, who have hereunto subscribed our Names to reinsure the Company as more fully described in the attached wording:—

This policy being for 26.76% is to be responsible for its pro rata proportion of the amounts of Insurance stated herein.

Deposit

during the period commencing with the First day

of September, 1978 and ending with the First day

of September, 1979 , both days at noon. 12.01 a.m. Local Standard Time.

Being a Reinsurance of and warranted same gross rate, terms and conditions as and to follow the settlements of the Company and that the Company retains during the currency of this Policy at least $2,000,000 subject to excess of loss and/or Treaty Reinsurance on the identical subject matter and risk and in identically the same proportion on each separate part thereof, but in the event of the retained line being less than as above, Underwriters' lines to be proportionately reduced.

No. R. 614/NC 5950

Printed by Lloyd's of London Printing Services Ltd.

(C.E.H./7)

amount or otherwise, this Policy shall become void, and all claims thereunder shall be forfeited

## Now know Ye

that We, the Underwriting Members of the Syndicates whose definitive Numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves, each for his own part and not one for another, our Heirs, Executors and Administrators, and in respect of his due proportion only, to pay or make good to the Company all such loss as aforesaid as may happen to the subject matter of this Reinsurance, or any part thereof, during the continuance of this Policy; not exceeding twenty six decimal seven six percentum of

the within mentioned limits such payment to be made after such loss is proved, and so that the due proportion for which each of us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the Total Sum Reinsured hereunder which is in the Table set opposite the definitive Number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this Policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Company or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Company on application.

### LLOYD'S POLICY SIGNING OFFICE,

GENERAL MANAGER.

Dated in London, the    22nd    Day of January
One Thousand Nine Hundred and    Seventy Nine.

LLOYD'S
POLICY SIGNING
OFFICE
EMBOSSMENT
APPEARS HERE
ON ORIGINAL
DOCUMENT

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum Reinsured hereunder shared between the Members of those Syndicates.

| AMOUNT PERCENTAGE OR PROPORTION PER CENT | BROKER SYN DCATE 614 | L P S O. NO & DATE 65658 18 12 78 UNDERWRITER'S REF | NO SYND | TOTAL LINE |
|---|---|---|---|---|
| .57 | 653 | 707 | | |
| 1.06 | 251 | 707 | | |
| 5.63 | 989 | 817390:8886C | | |
| .46 | 279 | 817390:8886C | | |
| 2.43 | 918 | 132HX1758011 | | |
| 5.65 | 618 | NA82958825308 | | |
| .61 | 278 | NA82958825308 | | |
| .61 | 948 | NA82958825308 | | |
| .61 | 210 | A2017777 | | |
| 1.63 | 190 | 9106502460FC | | |
| 1.63 | 128 | 505X7578OWEN | | |
| .41 | 701 | 505X7578OWEN | | |
| 1.01 | 553 | 59T4XXX748 | | |
| .41 | 471 | A.X485 | | |
| .41 | 604 | 812 | | |
| .41 | 812 | 6884660018 | | |
| .41 | 205 | CX3X16X0458 | | |
| .41 | 263 | 50417578 | | |
| .24 | 565 | 1798848 | | |
| .50 | 661 | 002ZOWEX5750 | | |
| .08 | 518 | 002ZOWEXOOX8 | | |
| .41 | 175 | CF7056806501 | | |
| .35 | 403 | X2162A065801 | | |
| .08 | 99 | X2162A065801 | | |

| AMOUNT PERCENTAGE OR PROPORTION | BROKER SYN DCATE 614 | L P S O. NO & DATE 65658 18 12 78 UNDERWRITER'S REF | NO SYND | TOTAL LINE |
|---|---|---|---|---|
| .60 | 346 | NA83958065521 | | |
| .16 | 694 | 4690:XX51182 | | |
| .16 | 694 | 4690KXX51182 | | |
| .16 | 255 | 919861 | | |
| .52 | 255 | 861078 | | |
| .24 | 56 | X05CX20TX. | | |
| | | THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS NUMBERED 1978.12 | 26.76 | |

(hereinafter referred to as the "Company")

NORTH RIVER INSURANCE COMPANY

This policy is to reinsure the Company in accordance with the particulars outlined in the following Schedule and shall be subject to Nos.   1,2,4,6 and 7 of the Conditions stipulated below:—

## SCHEDULE

ORIGINAL POLICY NO(S).          522 000410 4

NAME OF ASSURED                 OWENS-CORNING FIBERGLASS CORPORATION

INTEREST                        Liability arising out of the Assured'
                                operations.

LOCATION                        Worldwide

HAZARDS REINSURED
HEREUNDER                       Excess Umbrella Liability and/or as
                                original including Employee Benefit
                                Liability as underlying but excluding
                                claims arising from the Employee Reti
                                Income Security Act of 1974.

REINSURERS' LIABILITY
HEREUNDER                       26.76% of $50,000,000 each and every
                                occurrence and aggregate as applicabl
                                EXCESS OF
                                $25,000,000 each and every occurrence
                                and aggregate as applicable.

## CONDITIONS

No.

1. Premiums and losses hereunder to be payable in     UNITED STATES
   currency.

2. In consideration of the terms under which this policy is issued, the Company undertakes not to claim any deduction in respect of the premium hereon when making tax returns, other than Income or Profits tax returns, to any State or Territory or to the District of Columbia.

3. In consideration of the terms under which this policy is iss ed, the Company undertakes, when making Canadian tax returns, not to claim any deduction in respect of the premium hereon.

4. The premium payable hereon is provisional only and shall be subject to adjustment in accordance with the conditions of the original policy/policies. at the rate of $0.28 per $1,000 of the Assured's gross receipts.  In no event, however, shall the Earned Premium hereon be less than $480,000.00 (for 100%).

5. This policy is subject to the same cancellation provisions as may be contained in the original policy/policies.

6. This policy is subject to the same Cancellation Clause as that appearing in the original policy/policies reinsured hereunder. Should the original policy/policies not contain a cancellation clause then this policy is subject to the cancellation clause as below.

"This policy shall be cancelled at any time at the request of the Company or by the Reinsurers or their representatives, with or without the return or tender of unearned premium, by giving ninety days' notice of such cancellation. If this policy shall be cancelled as hereinbefore provided or become void or cease, the premium having been actually paid, the unearned premium shall be returned on surrender of this policy, the Reinsurers retaining the customary short rate (or, if this policy be issued for an odd term, at short rate to be arranged), except that when this policy is cancelled by the Reinsurers or their representatives by giving notice, they shall retain only the pro rata premium. In the event of the cancellation of the original policy/policies reinsured hereunder, this policy shall become cancelled from the same date and on the same basis as the original policy/policies."

## ADDITIONAL CONDITIONS

7. Claims Co-operation Clause

Notwithstanding anything contained herein to the contrary, it is a condition precedent to any liability under this policy that -

(a)  the Company shall upon knowledge of any loss or losses which may give rise to a claim under this Policy advise Underwriters thereof within seven days.

(b)  the Company shall furnish the Underwriters with all information available respecting such loss or losses and shall co-operate with Underwriters in the adjustment and settlement thereof.

Attaching to and forming part of Policy No.    614/NC 5950
effected with    Certain Underwriters at Lloyd's, London.

U.S.A.

### NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

(Approved by Lloyd's Underwriters' Non-Marine Association)

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of the paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

**Limited Exclusion Provision.***

I. It is agreed that the policy does not apply under any liability coverage, to { injury, sickness, disease, death or destruction, with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobile, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either
  (a) become effective on or after 1st May, 1960, or
  (b) become effective before that date and contain the Limited Exclusion Provision set out above;
provided that paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:
  Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

**Broad Exclusion Provision.***

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to { injury, sickness, disease, death or destruction bodily injury or property damage
  (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
  (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to { immediate medical or surgical relief, to expenses incurred with respect to { bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to { injury, sickness, disease, death or destruction bodily injury or property damage resulting from the hazardous properties of nuclear material, if
  (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
  (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
  (c) the { injury, sickness, disease, death or destruction arises out of the furnishing bodily injury or property damage by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to { injury to or destruction of property at such nuclear facility. property damage to such nuclear facility and any property thereat.

IV. As used in this endorsement:
  "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means
  (a) any nuclear reactor,
  (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
  (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
  (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
  and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
  With respect to injury to or destruction of property, the word "injury" or "destruction" "property damage" includes all forms of radioactive contamination of property.
  includes all forms of radioactive contamination of property.

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which become effective on or after 1st May, 1960, provided this paragraph (3) shall not be applicable to
  (i) Garage and Automobile Policies issued by the Reassured on New York risks, or
  (ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,
  until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(4) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Reassured in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions adopted by the Canadian Underwriters' Association or the Independent Insurance Conference of Canada.

*NOTE. The words printed in italics in the Limited Exclusion Provision and in the Broad Exclusion Provision shall apply only in relation to those bodily injury liability coverages for which the appropriate one of those two words.

### SERVICE OF SUIT CLAUSE (U.S.A.)
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Insured for reinsured) will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

**Mendes & Mount, 3, Park Avenue, New York, N.Y. 10016, U.S.A.**

that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and or upon the request of the Insured (or reinsured) to give a written undertaking to the Insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

22/5/52
N.M.A. 772

---

### INDUSTRIES, SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE No. 3
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:

(1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (1) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed, where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

(2) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

(3) Fines, penalties, punitive or exemplary damages.

This Clause shall not extend this Insurance to cover any liability which would not have been covered under this Insurance had this Clause not been attached.

22/1/70.
N.M.A. 1685.

WHEREVER THE WORD "INSURANCE" APPEARS HEREIN IT SHALL BE DEEMED TO READ "REINSURANCE".

J1 $ (C.



# EXHIBIT B

PC _Y No. 614/NC 8097

FOIA: _____ G/

### CAJA NACIONAL DE AHORRO Y SEGURO

Whereas    INTERNATIONAL SURPLUS LINES INSURANCE COMPANY

hereinafter called the Company    has   paid **$2,256.00 being 0.47% of**

$480,000.00    Premium or Consideration to the    Caja Nacional De Ahorro Y Seguro

hereinafter called the Reinsurer   to Reinsure the Company **as more fully defined in Lloyd's Policy No. 614/NC 8097**

ECT ASSURED:

K:    Excess Umbrella Liability

INSURED:    $50,000,000 each and every occurrence and aggregate as
applicable
EXCESS OF
$25,000,000 each and every occurrence and aggregate as
applicable.

THIS POLICY IS ISSUED SUBJECT TO THE SAME TERMS, CLAUSES
AND CONDITIONS AND IS IDENTICAL IN RISK, SUBJECT MATTER
AND INTEREST AS POLICY NO. 614/NC 8097 ISSUED BY CERTAIN
UNDERWRITERS AT LLOYD'S, LONDON.

This policy is in force
during the period commencing with the    **First**    day of
**September, 1979**    and ending with the    **First**
day of    **September, 1980**    both days at **12.01 a.m. Local**
**Standard Time**
if the Company shall make any claim knowing the same to be false or fraudulent, as
_____ _____ _____ otherwise  this Policy shall become void, and all claim thereunder shall
_____ _____ _____

Now know ye that the Reinsurer does hereby bind itself to pay or make good
___ Company ___ to the Company's Executors, Administrators and Assigns all such Loss
___ ___ ___ ___ aforesaid subject to the terms of this reinsurance policy during the
___ ___ ___ ___ not exceeding the sum of    **Zero Decimal Four Seven**
**percentum of the within mentioned limits**
___ ___ ___ ___ ___ ___ after such Loss, Damage or Liability is proved

In Witness Whereof : being a Duly Authorised Representative of the Re-
___ ___ ___ ___    **2nd**    day of
**January,**    one thousand nine hundred and    **Eighty**

**CAJA NACIONAL DE AHORRO Y SEGURO**

## 1% TAX CLAUSE

Notice is hereby given that the Companies have agreed to allow for the purpose of paying the Federal Excise Tax 1% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder the Companies will deduct 1% from the amount of the return and the Assured or his agent should take steps to recover the Tax from U.S. Government.

## CURRENCY CLAUSE

It is understood and agreed that all amounts used herein are in UNITED STATES CURRENCY, and that premium shall be paid, and all losses shall be adjusted and paid in UNITED STATES CURRENCY.



614/NC 8097

**CAJA** NACIONAL DE AHORRO Y SEGURO

$2,256.00

1st September, 1980

| In: ommunications please quote | | |
|---|---|---|
| **614** | **R** | NC 8097 |

**FORM J 1  $**
**(C.E.H.)**



LLOYD'S   LONDON

# Lloyd's Reinsurance Policy

## INTERNATIONAL SURPLUS LINES INS. CO.

$   $

$135,168.00

*Date of Expiry*  1st September, 1980

*The Company is requested to read this Policy and, if it is incorrect, return it immediately for alteration.*

In the event of any occurrence likely to result in a claim under this Policy, immediate notice should be given to :—

# LLOYD'S REINSURANCE POLICY

## Whereas

**of** INTERNATIONAL SURPLUS LINES INSURANCE COMPANY

(hereinafter called "the Company"), has paid $135,168.00 (being 28.16%) Premium or Consideration to Us, who have hereunto subscribed our Names to reinsure the Company as more fully described in the attached wording:—

This policy being for 28.16% is to be responsible for its pro rata proportion of the amounts of insurance stated herein.

during the period commencing with the **First day** **of September, 1979** and ending with the **First day** **of September, 1980**, both days at 12.01 a.m. Local Standard Time

Being a Reinsurance of and warranted same gross rate, terms and conditions as and to follow the settlements of the Company and that the Company retains during the currency of this Policy at least $2,000,000 subject to excess of loss and/or Treaty Reinsurance on the identical subject matter and risk and in identically the same proportion on each separate part thereof, but in the event of the retained line being less than as above, Underwriters lines to be proportionately reduced.

If the Company shall make any claim knowing the same to be false or fraudulent as regards ... this Policy shall become void and all claims thereunder shall be forfeited.

No. R 614/NC 8097

Printed by Lloyd's of London Printing Services Ltd.

MEMBERS OF LLOYDS ONLY
ACTS 1871 TO 1951
FOR SIGNATURE BY UNDERWRITERS
LLOYDS

**Now know ye** that We, the Underwriters, Members of the Syndicates whose definitive Numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves, each for his own part and not one for another, our Heirs, Executors and Administrators, and in respect of his due proportion only, to pay or make good to the Company all such loss as may happen to the subject matter of this Reinsurance, or any part thereof during the continuance of this Policy; not exceeding   Twenty Eight decimal One Six percentum of the within mentioned limits

such payment to be made after such loss is proved, and so that the due proportion for which each of us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the Total Sum Reinsured hereunder which is in the Table set opposite the definitive Number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this Policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Company or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Company on application.



FOR EMBOSSMENT BY ● LLOYD'S POLICY SIGNING OFFICE ●

LLOYD'S POLICY SIGNING OFFICE,

GENERAL MANAGER.

Dated in London, the   7th   Day of   May, One Thousand Nine Hundred and   Eighty.



(Z.E.H./7)

UNDERWRITERS SIGNED LINES HERETO REPRESENT THEIR PERCENTAGES PROPORTION OF THE TOTAL REINSURANCE PROVIDED IN THE FORM ATTACHED HERETO.

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum Reinsured hereunder shared between the Members of those Syndicates.

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED 1980/1

| BROKER | L.P.S.O. NO. & DATE | PAGE |
| --- | --- | --- |
| 614 | 63637 21 01 80 | 1 |

| AMOUNT PERCENTAGE OR PROPORTION PER CENT | SYNDICATE | UNDERWRITER'S REF. |
| --- | --- | --- |
| | | |

TOTAL LINE

NO. OF SYND

| BROKER | L.P.S.O. NO. & DATE | PAGE |
| --- | --- | --- |
| 614 | 63637 21 01 80 | 2 |

| AMOUNT PERCENTAGE OR PROPORTION PER CENT | SYNDICATE | UNDERWRITER'S REF. |
| --- | --- | --- |
| 1.900 | 126 | 505 |
| .470 | 701 | 505 |
| .280 | 56 | X05DY20TX |

NO. OF SYND: 28   TOTAL LINE: 28.160

INTERNATIONAL SURPLUS LINES INSURANCE COMPANY
(hereinafter referred to as the "Company")

This policy is to reinsure the Company in accordance with the particulars outlined in the following Schedule and shall be subject to Nos. 1,2,3, 5 and 7 of the Conditions stipulated below:—

## SCHEDULE

**ORIGINAL POLICY NO(S).**    XSI 5731

**NAME OF ASSURED**

**INTEREST**    Liability arising out of the Assured's Operations.

**LOCATION**    Worldwide

**HAZARDS REINSURED HEREUNDER**    Excess Umbrella Liability and/or as original including Employee Benefit Liability as underlying but excluding claims arising from the Employee Retirement Income Security Act of 1974

**REINSURERS' LIABILITY HEREUNDER**    28.16% of $50,000,000 each and every occurrence and aggregate as applicable Excess of $25,000,000 each and every occurrence and aggregate as applicable.

## CONDITIONS

**No.**
1. Premiums and losses hereunder to be payable in    UNITED STATES currency.

2. In consideration of the terms under which this policy is issued, the Company undertakes not to claim any deduction in respect of the premium hereon when making tax returns, other than Income or Profits tax returns, to any State or Territory or to the District of Columbia.

3. In consideration of the terms under which this policy is issued, the Company undertakes, when making Canadian tax returns, not to claim any deduction in respect of the premium hereon.

4. The premium payable hereon is provisional only and shall be subject to adjustment in accordance with the conditions of the original policy/policies.

5. This policy is subject to the same cancellation provisions as may be contained in the original policy/policies plus an additional 10 days, not exceeding 60 days in all.

6. This policy is subject to the same Cancellation Clause as that appearing in the original policy/policies reinsured hereunder. Should the original policy/policies not contain a cancellation clause then this policy is subject to the cancellation clause as below.

"This policy shall be cancelled at any time at the request of the Company or by the Reinsurers or their representatives, with or without the return or tender of unearned premium, by giving thirty days' notice of such cancellation. If this policy shall be cancelled as hereinbefore provided or become void or cease, the premium having been actually paid, the unearned premium shall be returned on surrender of this policy, the Reinsurers retaining the customary short rate (or, if this policy be issued for an odd term, at short rate to be arranged), except that when this policy is cancelled by the Reinsurers or their representatives by giving notice, they shall retain only the pro rata premium. In the event of the cancellation of the original policy/policies reinsured hereunder, this policy shall become cancelled from the same date and on the same basis as the original policy/policies."

## ADDITIONAL CONDITIONS

7. Claims Co-operation Clause

Notwithstanding anything contained herein to the contrary, it is a condition precedent to any liability under this policy that –

(a) the Company shall upon knowledge of any loss or losses which may give rise to a claim under this Policy advise Underwriters thereof within seven days.

(b) the Company shall furnish the Underwriters with all information available respecting such loss or losses and shall co-operate with Underwriters in the adjustment and settlement thereof.



Attaching to and forming part of Policy No. 614/NC 8097
effected with   Certain Underwriters at Lloyd's, London.

U.S.A.

**RADIOACTIVE CO    .MINATION EXCLUSION CLAUSE—LIABIL    —DIRECT**
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause—Liability—Direct) to liability insurances affording worldwide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
N.M.A. 1477

**Wherever the word "Insurance" appears herein it shall be deemed to read "Reinsurance"**

---

**INDUSTRIES, SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE No. 3**

*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Insurance does not cover any liability for:
  (1)  Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (1) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed, where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
  (2)  The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
  (3)  Fines, penalties, punitive or exemplary damages.
This Clause shall not extend this Insurance to cover any liability which would not have been covered under this Insurance had this Clause not been attached.

22/1/70
N.M.A. 1685

**Wherever the word "Insurance" appears herein it shall be deemed to read "Reinsurance"**

---

**SERVICE OF SUIT CLAUSE (U.S.A.)**

*(Approved by Lloyd's Underwriters' Non-Marine Association)*

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon

**Messrs. Mendes & Mount, 3 Park Avenue, New York, N.Y. 10016.**

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

22/5/52
N.M.A. 772

U.S.A.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)
*(Approved by Lloyd's Underwriters' Non-Marine Association)*
*For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—Direct (Limited) applies.*

This policy*                                                       does not apply:—

I.   Under any Liability Coverage, to injury, sickness, disease, death or destruction
    (a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
    (b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
    (a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
    (b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
    (c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.  As used in this endorsement:
"**hazardous properties**" include radioactive, toxic or explosive properties; "**nuclear material**" means source material, special nuclear material or byproduct material; "**source material**", "**special nuclear material**", and "**byproduct material**" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "**waste**" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "**nuclear facility**" means
    (a)  any nuclear reactor,
    (b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
    (c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
    (d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.
With respect to injury to or destruction of property, the word "**injury**" or "**destruction**" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.
    *NOTE:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.*

17/3/60
N.M.A. 1256     Wherever the word "Insurance" appears herein it shall be deemed to read "Reinsurance"

J1 $ (C.E.H.)   *A G R E E D   W O R D I N G*



# LLOYD'S REINSURANCE POLICY



NC809

**Whereas** INTERNATIONAL SURPLUS LINES INSURANCE COMPANY
sit
(hereinafter called "the Company"), has paid $135,165.00 (being 25.
Premium or Consideration to Us, who have hereunto subscribed our Names to
reinsure the Company as more fully described in the attached wording:—

$

Printed by Lloyd's or London Printing Services Ltd.

No. R  614/NC 8037

This policy being for 25.168 is to be responsible for its pro rata
proportion of the amount of insurance stated herein.

11,264,000

during the period commencing with the **First day**

of **September, 1979** and ending with the **First day**

of **September, 1980** , both days at 12.01 a.m. Local Standard Time

Being a Reinsurance of and warranted same gross rate, terms and conditions as and to follow
the settlements of the Company and that the Company retains during the currency of this Policy at least
$2,000,000 subject to excess of loss and/or Treaty Reinsurance
on the identical subject matter and risk and in identically the same proportion on each separate part
thereof, but in the event of the retained line being less than as above, Underwriters' lines to be
proportionately reduced.

If the Company shall make any claim knowing the same to be false or fraudulent as regards
amount or otherwise, this Policy shall become void, and all claims thereunder shall be forfeited.

**Now know We** that We, the Underwriters, Members of the Syndicates whose
definitive Numbers in the after-mentioned List of Underwriting Members of Lloyd's are set
out in the attached Table, hereby bind ourselves, each for his own part and not one for
another, our Heirs, Executors and Administrators, and in respect of his due proportion
only, to pay or make good to the Company all such loss as aforesaid as may happen to the
subject matter of this Reinsurance, or any part thereof during the continuance of this
Policy not exceeding **Twenty eight decimal One six percents of the
within mentioned limits**

such payment to be made after such loss is proved, and so that the due proportion for which
each of us, the Underwriters, is liable shall be ascertained by reference to his share, as
shown in the said List, of the Amount, Percentage or Proportion of the Total Sum Reinsured
hereunder which is in the Table set opposite the definitive Number of the Syndicate of
which such Underwriter is a Member AND FURTHER THAT the List of Underwriting
Members of Lloyd's referred to above shows their respective Syndicates and Shares
therein, is deemed to be incorporated in and to form part of this Policy, bears the number
specified in the attached Table and is available for inspection at Lloyd's Policy Signing
Office by the Company or their representatives and a true copy of the material parts of
the said List certified by the General Manager of Lloyd's Policy Signing Office will be
furnished to the Company on application.

LLOYD'S POLICY SIGNING OFFICE,

*L. E. Harding*

GENERAL MANAGER.

LLOYD'S
POLICY SIGNING
OFFICE
EMBOSSMENT
APPEARS HERE
ON ORIGINAL
DOCUMENT

Dated in London, the **7th**
One Thousand Nine Hundred and **Eighty.** Day of **May,**

(C.E.H.7)

UNDERNE' ES SIGNED LINES HERETO REPRESENT THEIR %CENTAGES PROPORTION OF THE TOTAL
(ISSURANCE PROVIDED BY THE FORM ATTACH HERETO.

### Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum Reinsured hereunder shared between the Members of those Syndicates.

| AMOUNT PERCENTAGE OR PROPORTION PER CENT | BROKER | L.P.S.O. NO. & DATE | PAGE | AMOUNT PERCENTAGE OR PROPORTION PER CENT | BROKER | L.P.S.O. NO. & DATE | PAGE |
|---|---|---|---|---|---|---|---|
| | 614 | 63637 21 01 80 | 1 | | 614 | 63637 21 01 80 | 2 |
| | SYNDICATE | UNDERWRITER'S REF | | | SYNDICATE | UNDERWRITER'S REF | |
| .660 | 653 | 707 | | 1.900 | 226 | 505 | |
| 1.240 | 231 | 707 | | .470 | 221 | 505 | |
| 6.590 | 989 | 924G84L8886C | | .280 | 56 | X050Y20TX | |
| .530 | 279 | 924G84L8886C | | | | | |
| 1.900 | 918 | LG2HX1159081 | | THE LIST OF UNDERWRITING MEMBERS | | | |
| 3.680 | 618 | NA8295924G01 | | OF LLOYDS IS NUMBERED 1980/1 | | | |
| .710 | 278 | NA8295924G01 | | | | | |
| 1.110 | 948 | NA8295924G01 | | | | | |
| 1.900 | 211 | B2017777 | | | | | |
| .470 | 194 | 3220H02460FD | | | | | |
| .190 | 203 | DXFX176X0439 | | | | | |
| .380 | 835 | 919861 | | | | | |
| .280 | 295 | 861079 | | | | | |
| .470 | 365 | 0659848 | | | | | |
| .390 | 871 | AXX485 | | | | | |
| .080 | 408 | K2162A28G904 | | | | | |
| .240 | 94 | K2162A28G904 | | | | | |
| .235 | 33 | 504X6S79 | | | | | |
| .235 | 674 | 4690LXX31182 | | | | | |
| .380 | 604 | 4690KXX31182 | | | | | |
| .090 | 758 | U02Y0WED3733 | | | | | |
| .470 | 116 | U02Y0WED034X9 | | | | | |
| .710 | 546 | DF7036806S05 | | | | | |
| .470 | 553 | NA8395930G52 | | | | | |
| | | B8THXX3795 | | | | | |
| NO. OF SYND. | | TOTAL LINE | | NO. OF SYND. | | TOTAL LINE | |
| | | | | 28 | 28.160 | | |

# INSURANCE   COMPANIES

## COLLECTIVE   REINSURANCE   POLICY

𝔚𝔥𝔢𝔯𝔢𝔞𝔰 the Company designated in the Schedule hereto has paid to Us, the Reinsurers, the premium stated in the Schedule hereto, the Reinsurers agree to reinsure the Company during the period of reinsurance designated in the Schedule hereto against the same perils and on the identical subject matter as are reinsured by the policy issued by Lloyd's Underwriters, the number of which policy is stated in the Schedule hereto.

Warranted that this policy shall be subject to the same terms and conditions as the said policy issued by Lloyd's Underwriters on the identical subject matter and risk and in identically the same proportion on each separate part thereof.

If the Company shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this policy shall become void and all claim thereunder shall be forfeited.

𝔑𝔬𝔴 𝔨𝔫𝔬𝔴 𝔶𝔢 𝔱𝔥𝔞𝔱 we the Reinsurers do hereby bind ourselves, each Reinsurer for itself only and not one for another and in respect only of the due proportion of each Reinsurer to pay to the Company or the Company's Executors, Administrators and Assigns, all such loss as above stated that the Company may sustain during the aforesaid period, not exceeding in all the sum reinsured, as properly apportioned to the sums, or to the percentages or proportions of the sum reinsured, subscribed against our names respectively.

U.S.A.

## 1% TAX CLAUSE

Notice is hereby given that the Companies have agreed to allow for the purpose of paying the Federal Excise Tax 1% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder the Companies will deduct 1% from the amount of the return and the Assured or his agent should take steps to recover the Tax from U.S. Government.

ATTACHING TO AND FORMING PART OF POLICY NO: _____614/NC 8097_____

It is hereby understood and agreed that the coverage provided hereund
is in respect of

EXCESS UMBRELLA LIABILITY

all as more fully described in the Policy issued by the within menti
Insurer.

It is understood and agreed that the subscription(s) of the Company(
subscribing to this Policy is/are in percentages of the following li

$50,000,000 each and every occurrence and aggregate
as applicable

EXCESS OF

$25,000,000 each and every occurrence and aggregate
as applicable.

No. 614/NC 8097      <u>SCHEDULE.</u>      S /SDE/CSH

| The Company: | INTERNATIONAL SURPLUS LINES INSURANCE COMPANY |
|---|---|
| Name of Direct Assured: | |
| Interest: | Liability arising out of the Assured's operations |
| Location of Interest: | Worldwide |
| Period of Reinsurance: | 1st September, 1979 to 1st September, 1980 both days at 12.01 a.m. Local Standard Time |

Number of Policy of Lloyd's Underwriters.   614/NC 8097

| LIABILITY HEREUNDER | REINSURERS | Reference | Premium |
|---|---|---|---|
| 1.90% | STRONGHOLD INSURANCE COMPANY LTD. | 220489 | |
| 1.90% | CNA REINSURANCE OF LONDON LIMITED | 351711 B76 | |
| 3.80% | | | $18,239.99 |

"IN WITNESS WHEREOF the Policy Signing Manager of THE POLICY SIGNING & ACCOUNTING CENTRE LIMITED ("PSAC") has subscribed his name on behalf of each of the PSAC Companies and (where the Companies Collective Signing Agreement ("CCSA") is being implemented) on behalf of the Leading CCSA Company which is a PSAC member and authorised to sign this Policy (either itself or by delegation to PSAC) on behalf of all the other CCSA Companies."

ized by

the .
One

Signed:   R. E. Sanders    Policy Department
*Policy Signing Manager*      Seal

PSAC AP/1/178

*No.* 614/NC 8097

# COLLECTIVE
# REINSURANCE   POLICY

PSAC PC NUMBER

P80C1210001665

# INSURANCE COMPANIES

## COLLECTIVE REINSURANCE POLICY

**Whereas** the Company designated in the Schedule hereto has paid to Us, the Reinsurers, the premium stated in the Schedule hereto, the Reinsurers agree to reinsure the Company during the period of reinsurance designated in the Schedule hereto against the same perils and on the identical subject matter as are reinsured by the policy issued by Lloyd's Underwriters, the number of which policy is stated in the Schedule hereto.

Warranted that this policy shall be subject to the same terms and conditions as the said policy issued by Lloyd's Underwriters on the identical subject matter and risk and in identically the same proportion on each separate part thereof.

If the Company shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this policy shall become void and all claim thereunder shall be forfeited.

**Now know ye that** we the Reinsurers do hereby bind ourselves, each Reinsurer for itself only and not one for another and in respect only of the due proportion of each Reinsurer to pay to the Company or the Company's Executors, Administrators and Assigns, all such loss as above stated that the Company may sustain during the aforesaid period, not exceeding in all the sum reinsured, as properly apportioned to the sums, or to the percentages or proportions of the sum reinsured, subscribed against our names respectively.

U.S.A.

## 1% TAX CLAUSE

Notice is hereby given that the Companies have agreed to allow for the purpose of paying the Federal Excise Tax 1% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder the Companies will deduct 1% from the amount of the return and the Assured or his agent should take steps to recover the Tax from U.S. Government.

ATTACHING TO AND FORMING PART OF POLICY NO:    614/NC 8097

It is hereby understood and agreed that the coverage provided hereunder is in respect of

EXCESS UMBRELLA LIABILITY

all as more fully described in the Policy issued by the within mentioned Insurer.

It is understood and agreed that the subscription(s) of the Company(ies) subscribing to this Policy is/are in percentages of the following limit:

$50,000,000 each and every occurrence and aggregate
as applicable

EXCESS OF

$25,000,000 each and every occurrence and aggregate
as applicable.

*No.* 614/NC 8097      <u>SCHEDULE.</u>

S/SDE/CSH

| The Company: | INTERNATIONAL SURPLUS LINES INSURANCE COMPANY |
|---|---|
| Name of Direct Assured: | |
| Interest: | Liability arising out of the Assured's operations |
| Location of Interest: | Worldwide |
| Period of Reinsurance: | 1st September, 1979 to 1st September, 1980 both days at 12.01 a.m. Local Standard Time |
| Number of Policy of Lloyd's Underwriters. | 614/NC 8097 |

| LIABILITY HEREUNDER | REINSURERS | Reference | Premium |
|---|---|---|---|
| 5.70% | (26.62% WALBROOK INS. CO. LTD.<br>(12.99% "WINTERTHUR" SWISS INS. CO.<br>( 6.49% EL PASO INS. CO. LTD.<br>(11.69% MUTUAL REINSURANCE CO. LTD.<br>(12.99% DART INS. CO. LTD.<br>(11.04% BERMUDA FIRE & MARINE INS.<br>(      CO. LTD.<br>( 1.95% COMPAGNIE EUROPEENNE<br>(      d'ASSURANCES INDUSTRIELLES<br>(      S.A.<br>( 6.49% BRYANSTON INS. CO. LTD.<br>( 9.74% ST. KATHERINE INS. CO. LTD.<br>Per: H.S. Weavers (Underwriting)<br>     Agencies Ltd. | LO3G153 29 709 | $27,359.98 |
| 3.80% | (26.62% WALBROOK INS. CO. LTD.<br>(12.99% "WINTERTHUR" SWISS INS. CO.<br>( 6.49% EL PASO INS. CO. LTD.<br>(11.69% MUTUAL REINSURANCE CO. LTD.<br>(12.99% DART INS. CO. LTD.<br>(11.04% BERMUDA FIRE & MARINE INS.<br>(      CO. LTD.<br>( 1.95% COMPAGNIE EUROPEENNE<br>(      d'ASSURANCES INDUSTRIELLES<br>(      S.A.<br>( 6.49% BRYANSTON INS. CO. LTD.<br>( 9.74% ST. KATHERINE INS. CO. LTD.<br>Per: H.S. Weavers (Underwriting)<br>     Agencies Ltd. | LO3G171 02 888 | $18,240.02 |
| 1.43% | PACIFIC & GENERAL INS. CO. LTD. | 4636000758 00 | $ 6,864.00 |
| 1.90% | DOMINION INSURANCE COMPANY LTD. | 122034 | $ 9,119.98 |
| 12.83% | | | $61,583.98 |

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

INTERNATIONAL INSURANCE COMPANY

## DEFENDANTS

CAJA NACIONAL DE AHORRO Y SEGURO

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___NH___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __unknown__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Butler, Rubin, Saltarelli & Boyd
1800 Three First National Plaza
Chicago, IL  60602
(312) 444-9660

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 2 U.S. Government
Defendant

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity
(Indicate Citizenship of
Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Plaintiff seeks damages for breach of contract and breach of the duty of utmost good faith.

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

### CONTRACT
☒ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury— Med Malpractice
☐ 365 Personal Injury— Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**
$2,174,309.82

Check YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES ☒ NO

## VIII. REMARKS
General Rule  2.21D(2) this case

In response to ☒ is not a refiling of a previously dismissed action
☐ is a refiling of case number _____ of Judge _____

DATE
4-10-2000

SIGNATURE OF ATTORNEY OF RECORD
R. Douglas Boyd

**UNITED STATES DISTRICT COURT**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

In the Matter of

INTERNATIONAL INSURANCE COMPANY

   v.

CAJA NATIONAL DE AHORRO Y SEGURO

**00C 2189**

Case Number:

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

International Insurance Company

*JUDGE GOTTSCHALL*

*MAGISTRATE JUDGE BOBRICK*

*DOCKETED APR 11 2000*

| (A) | (B) |
|---|---|
| SIGNATURE *R. Douglass Bond* | SIGNATURE *James I. Rubin* |
| NAME R. Douglass Bond | NAME James I. Rubin |
| FIRM Butler, Rubin, Saltarelli & Boyd | FIRM Butler, Rubin, Saltarelli & Boyd |
| STREET ADDRESS 1800 Three First National Plaza | STREET ADDRESS 1800 Three First National Plaza |
| CITY/STATE/ZIP Chicago, IL 60602 | CITY/STATE/ZIP Chicago, IL 60602 |
| TELEPHONE NUMBER (312) 444-9660 | TELEPHONE NUMBER (312) 444-9660 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06203843 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 02413191 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☒ NO ☐ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE *Randi A. Ellias* | SIGNATURE |
| NAME Randi L. Ellias | NAME |
| FIRM Butler, Rubin, Saltarelli & Boyd | FIRM |
| STREET ADDRESS 1800 Three First National Plaza | STREET ADDRESS |
| CITY/STATE/ZIP Chicago, IL 60602 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (312) 444-9660 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06237021 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☒ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☒ |